And to that extent, we're familiar with your cases. I know you're familiar with our lighting system. The green light means you're running free. When the yellow light appears, you should begin to bring your argument to a close. And then when the red light appears, you should finish your sentence and stop. And rebuttal is for rebuttal only. All right. We call the first case U.S. v. Torres. And we hear first from Mr. Hinjo. May it please the Court. Eric Honcho, Dr. Francisco Torres in this case. Your Honors, the issue in this case is whether or not Mr. Torres' failure to update his sex offender registration predated a valid rule by the Attorney General as to the retroactivity of SORNA. And if so, then Mr. Torres' conviction violated the Ex Post Factos Clause and should be vacated. Your Honors, I've affectionately called this case my back to the future case. As you see just by the case number, this is a case dating back with this Court to 2009. And the facts and circumstances, in fact, actually go back all the way to 1999 in this case. So I'm going to go over a brief procedural and historical and factual background and what brings us here today. Mr. Torres was initially convicted in 1999 of a sex offense. It was a qualifying offense. And he then was released from custody on Christmas Day, 2004. And five days later, on December 30th, 2004, he began his initial registration with the Texas State Sex Offender Registration Unit. It wasn't until nearly a year and a half later that SORNA was actually enacted. July 26, 2006, SORNA signed into law by President Bush. And when it signed, as we know now, it included a provision as to the retroactivity of SORNA to offenders whose convictions predated that inoculant date. The Attorney General, on February 28, 2007, promulgated the first rule, which has been dubbed the interim rule, as to retroactivity. And in that, attempted to and declared that SORNA should be retroactive to individuals whose convictions predated the signing date of SORNA. Mr. Torres failing to update as alleged in the indictment, and as what was in the stipulated facts in this case, began literally on the date of SORNA's enactment. July 26, 2006 is the date in the indictment of when his failing to register begins. So you see it starts before that interim rule comes into play, and then it does go after the interim rule. The final failing to update his registration being as late as March 2008, Your Honors. While a lot happens then at that point, at the end of this case, the court, we have a bench trial on stipulated facts, as mentioned earlier. And the court finds Mr. Torres guilty, and puts him on five years probation, which he's actually successfully completed at this point now, and is no longer under supervision. And this case was stayed pending Kebido. It was stayed for the first three-judge panel, then the embank, and then ultimately the Supreme Court's decision in this case, and came back now. And as a live case, with the issue remaining here, the only novel, unresolved, not foreclosed issue in the Fifth Circuit, which is as to the ex post facto violation in this case. And what the argument focuses in here is not asking that this court overrule, abrogate, change anything that it said before, specifically in the Johnson case. What Mr. Torres' argument is, is that, in fact, the conclusions by the Supreme Court in Reynolds, as well as Johnson by this court, support the contention here that there's an ex post facto violation. My question is why doesn't the Hormuz error rule in Johnson apply to this case just as it did in Johnson? And that's, Your Honor, a very good question, which goes back to what Johnson was about. Johnson itself, in the opinion, states that Johnson's claim is for procedural injury. His claim is specifically attacking under the APA. At 922 in Johnson, you'll see the language in there that indicates that it's a procedural claim. And what the court does, as it's required under the APA, is it goes about first determining that there, in fact, was a violation of the APA. In other words, the attorney general, when it promulgated the interim rule, violated the law. It did not comport with what the requirements of the APA were. Now, that wasn't the end, and this goes back to your question, Your Honor, which is then the court's required under the APA, it's 5 U.S.C. section 706, to look at harmless error. And there, what the Johnson court decided was that applying harmless error in this context under the APA and some of the preexisting Fifth Circuit case law on APA administrative harmless error, that the burden was on Mr. Johnson to show that he would have involved himself or could have involved himself, and it would have changed what the attorney general did in terms of its interim rule and the subsequent final rules. And the court decided, again, under the APA harmless error standard, that there was no error, he was not prejudiced, Your Honor. And that's the distinction in this case, is we are not, there is no claim in this case to the APA harmless error process. This is a constitutional claim that it violates ex post facto. And what Reynolds has told us, Reynolds says, first and foremost, there must be, and in fact, when the Supreme Court remanded Reynolds back to the Third Circuit, said it's important to determine if there's a valid rule. That matters, is what they said. And there has to be a valid rule from the AG, and Johnson tells us otherwise. Johnson tells us that, in fact, the AG violated the APA in promulgating that interim rule. Well, but you don't violate the APA if it's harmless error. I mean, isn't that the— Well, the harmless error looks at whether or not, in that case, Johnson was prejudiced, because it talked about in there what Johnson should have done or could have done and what he didn't show as far as his harmless error. What's the distinction in your facts from Johnson? And the facts from Johnson, well, one is the type of claim. This is a constitutional ex post facto claim. But I mean factually, the dates and everything are the same. I mean, in principle. In principle, the facts are the same, but obviously the legal claim is absolutely different. This is not a procedural injury claim as coined by the Johnson court. This is a constitutional ex post facto claim. The other part and component of this is Johnson didn't have the benefit of Reynolds by the Supreme Court explain that there needed to be that valid rule. The Johnson court was looking directly at the APA stricture and ultimately relied exclusively on the harmless error component of it to show that Johnson failed to show his prejudice. And so that's, in short, the great distinction being the type of claim being brought by the individual. Obviously, again, Johnson, APA, in this case, Mr. Torres has an ex post facto claim. I think also in looking at Johnson, some of the other reasons to support that there was not a valid rule is Johnson itself uses the conditional language. In the opinion Johnson, it talks about if the AG had done this, then it would have been effective at this date. Not it was, not the AG did this, not it comported with the law, not this is the law. It's conditional because right before that language, this court had said the AG failed to do what it was required to do under the APA. Another part of that is, again, back to the procedural injury claim. It is very different from an ex post facto claim. And so in terms of what Johnson was about, it was strictly about that procedural injury under the APA as opposed to the ex post facto clause. I think the other case that has been raised, in fact, by this court in supplemental briefing was the Hong case. And I think that case is important. The distinguishing component of that is, in fact, Hong had an ex post facto claim that they dropped. In the reply brief in that case, the defendant dropped the ex post facto, and that was because of the evolution. Carr had been issued, and Carr was putting the Hong case squarely into what obviously occurred for it, which was the vacation of the conviction in that matter. I think also if you look at the other cases that the government's raised, in fact, the government provided a timeline today, which I just wanted to address briefly to the extent the government relies on that today. There are some errors in it. In the top line, it says that Torres begins reporting in March 31, 2005. In fact, the stipulated facts in the excerpt of Rector at 433 show that he began doing that on December 30, 2004. Additionally, it indicates the AG's interim rules, February 27th. It's actually the 28th. And I think most importantly, the bevy of unpublished cases down here and what the import of those are. I don't want to reiterate what was in the early motion work in this case, but I think it's important to note that those cases, by and large, were all unpublished decisions that resolved direct APA challenges in some instances. In other cases, for example, the Sutherland case that's on this timeline was a non-delegation case, as well as these cases all involved. And this goes back to your question earlier about the facts, Judge Davis. They involved largely failing the registers that post-dated the final rule, which is in July of 2008. So I just wanted to point out that those cases are not—not only are they not relevant and they're not published and not precedential, but they're, in fact, absolutely distinguishable from the present matter, both in terms of the type of claim as well as the facts that are raised. And I detailed that in my opposition to the government's motion for summary affirmance in this case. And with that, I'll leave it at that unless the Court has any other questions. Okay. Thank you very much. Thank you, Your Honor. Okay. Ms. Blatt. Good morning. May it please the Court and counsel, Mayor Blatt, for the United States' appellee in this matter. The timeline before you is a visual depiction of the course of this litigation against the movement of time—against the movement of time and precedent in this case. And I'd like to go back to what Mr. Torres stated was his—the issue before this Court today in his reply brief, and I'm just going to quote briefly. He says that Torres argues that his SORNA conviction violates the ex post facto clause because a valid rule by the Attorney General making SORNA retroactive did not exist at the time of his alleged failure to register an update. To be clear, Torres simply argues that Johnson demonstrates the interim rule is not a valid retroactivity decision as required by Reynolds. There are four reasons, and I'm just going to bullet point them and then circle back, why this argument fails. First, Mr. Torres' reliance on Reynolds is misplaced because, in fact, Reynolds actually affirms Johnson. Secondly, Johnson did not validate the APA—I'm sorry, did not invalidate the interim rule. In fact, it finds that the Attorney General's action is a harmless procedural defect that can be repaired by extending the period—the notice period to March 30, 2007. Third, Johnson and Huang did set the effective date of the interim rule as March 30, 2007, and Mr. Torres traveled and failed to register after that date. And finally, this Court has consistently applied Johnson, and the Supreme Court has consistently denied cert in any of the cases that have gone up to it on cert petition. So let me return to the first argument, which is that his reliance on Reynolds is misplaced. Reynolds quite explicitly did not rule on the issue of whether the interim rule was properly enacted pursuant to the APA. Nor could it have because the Third Circuit had held that SORNA was self-effectuating, and that was the issue before the Reynolds Court. Did SORNA self-effectuate retroactivity, or did the Attorney General have to act in some fashion in order to institute retroactivity? Reynolds decides no. The Attorney General is the one who has to create retroactivity. And there's no ex post facto clause issue in Reynolds either. Stated another way, Reynolds doesn't discuss what constitutes a valid retroactivity decision, as Mr. Torres claims it does. It's about how retroactivity can be determined. And so the only effect upon Reynolds was that it actually affirms what Johnson did in this Court. Johnson made the same choice that the Supreme Court did in Reynolds. Johnson said no, SORNA is not self-effectuating. The Attorney General has to act and create the rule. And then Johnson goes on to analyze that rule in light of the APA and finds that even though there was a procedural defect in how the Attorney General did that, in fact, that defect was harmless and affirms Mr. Johnson's conviction. That's why this Court has observed on many occasions that Reynolds does not call into question Johnson, no less overrule it. And that's why it relies upon the rule of orderliness and says that we don't have an implicit or explicit Supreme Court decision that tells us that we have to reconsider Johnson. And because we don't have that, we are not going to reconsider Johnson. And this is a real problem for Torres because in his argument, in his opening, he says, you know, that his SORNA conviction would violate the ex post facto clause because the Attorney General's rule was not valid as to him. But the converse is true because if the interim rule was valid, which is what Johnson says it is, then his ex post facto challenge has to fail. Here's another problem with the argument. He continues to try and inflate what was a finding of a harmless procedural defect in Johnson into a ruling that the interim rule is completely invalid. Now, he tries to get around that by maintaining in his reply brief, and I'm quoting here, the Johnson court never went so far as to say this interim rule was the effective date of SORNA retroactivity. That's the conditional language to which Mr. Honshu was referring in his argument. But after that conditional language, the court says, the Johnson court says, you know, Johnson traveled. He traveled after March 30, 2007, and he failed to register. And any error in the rule is not prejudicial as to him. In other words, Torres is exactly like Johnson, factually. They both traveled after the date of the interim rule, and they both failed to register after that date. Mostly, though, why Torres' argument doesn't make any sense here is because Johnson's conviction was affirmed for this court to hold that Johnson would not apply, and that somehow the APA and that Johnson invalidated the interim rule would mean that the Johnson court set up a regime for affirming constitutionally defective convictions, and that is clearly not what Johnson intended. More to the point, perhaps, Johnson, even if Johnson failed to actually define what the outside end of the gap is, it's not the only case that talks about what the end of the gap is. The next case down the line is Huang, which is issued within days of Johnson's publication. And about a month later, while rejecting a petition for en banc review, Judge Jolly writes the following. He says, although our opinion failed to cite Johnson, our reasoning and our holding in this case are not inconsistent with it. Well, what was the issue in Huang? It's the same issue as it is in Torres and as it is in Johnson. The issue is when did SORNA become applicable as to Huang, and whether action by the attorney general was required as a conditioned precedent to the enforcement of SORNA against all sex offenders who had traveled between the time of SORNA's effectuation in July 2006 and the entry of the attorney general's entry of the interim rule in February 2007. And what did the court find in Huang? It finds the same thing that Johnson finds. It finds that the subtext of SORNA authorizes the attorney general to create regulations for making SORNA retroactive to pre-act sex offenders, and it applies SORNA to Huang. Now, Huang is in the opposite position as Torres and Johnson. Huang traveled before the interim rule came into effect. And so they're like bookend cases because Mr. Huang was therefore not subject to SORNA because he came before the interim rule, as opposed to Torres and Johnson, who came after. And it's not just Johnson and Huang that the government or this court, for that matter, has relied upon. As reflected in the timeline, all of the decisions that follow Johnson demonstrate its continuing viability. Now, Torres calls this a litany of unpublished cases, but this litany aids the government's cause here. The timeline clarifies that this court has not retreated from Johnson, nor has the Supreme Court seen fit to question the opinion itself or its result. Fully 17 judges of this court have affirmed the vitality of Johnson. I've added in the two judges from Byrd, Judge Clement and Judge Haynes, which I've put in in a 28-J letter. Eighteen, if you count Judge Higginbotham, who actually wrote Johnson. Ten have explicitly agreed that Reynolds did not overrule or otherwise bring Johnson into question. And again here, this rule of orderliness applies, which is the court, I mean, Johnson has preclusive effect in the absence of any explicit or implicit Supreme Court precedent to the contrary. And as I previously discussed, Reynolds actually affirms the holding of, part of the holding of Johnson. Now, I agree that there are probably no cases that are exactly on point with the facts of this case, but Byrd and Curvell come pretty close. Byrd, who like Torres, traveled and failed to register after March 30th. Byrd is a 2011 case. And the court in that case relied upon Johnson and rejected his APA challenge. And again, you know, if the interim rule is right under the APA, Mr. Torres' ex post facto clause claim has to fail. Also, Byrd was cert denied by the Supreme Court. It was cert denied before Reynolds. But when you look at what happens in Reynolds, you realize that that's completely consistent. Because again, as in Johnson and Byrd, Reynolds says, only issue before us is whether or not SORNA is self-effectuating or the Attorney General has to make it retroactive. I mean, could all these judges be wrong? The answer is no. Because even after Huang, the Supreme Court denies cert in every single one of the cases that rely upon Johnson. Admittedly, some of them are not on point with the facts of this case. But it's the reliance upon Johnson that the court, that the government is propounding as dispositive in this case. The Supreme Court also denies cert in all of the post-Reynolds cases in those circuits that agree with the Fifth Circuit, that take the view that the interim rule was accurate, I'm sorry, was ultimately correctly instituted. That's the 4th, 7th, 11th. It also denies cert in all of the post-Reynolds cases in that minority of circuits that hold that the interim rule doesn't apply, which is 3, 6, and 9. And it's interesting that the 1st, 2nd, and 8th circuits have already moved past this issue by affirming the convictions of defendants who traveled after the final rule is instituted in 2008. So one way to interpret all of the diversity of all of these cert denials is to observe that this appears to be an issue of diminishing practical importance. And in this regard, it's significant that this case is before the court today after the long stay, waiting for the Kebido decision to come down. Ultimately, this case affords the court an opportunity to put in place the final small piece of its SORNA jurisprudence, because as Torres concedes and as the judge who denied the motion for summary affirmance in this case noted, all other avenues of constitutional challenge have been foreclosed to him by this court's precedence. If this court has any issues or any questions about anything in the case, I'm happy to take them now. If not, we request affirmance. Thank you. Okay. Mr. Henshaw, back to you, sir. Thank you, Your Honor. Briefly in rebuttal, Your Honor, Reynolds does not affirm Johnson. Reynolds did not discuss or deal with the issue in Johnson about the APA challenge. In fact, in Reynolds, the court stated when it was framing the issue that the moment when the attorney general promulgated a valid rule specifying the registration requires applicability, namely February 28th, 2007, or a later date if the February 28th specification was invalid. That in no way affirms Johnson. In fact, actually, that frames the issue that's in front of this court today, is whether or not there was a valid rule. Then the government argues about Hong again. Hong, to be clear, dropped the ex post facto claim. That's fact. Also, Hong wasn't challenging the interim rule. There wasn't a challenge to the interim rule in Hong. In fact, it was a statutory construction case in Hong because his facts were different than the facts in this case, namely that his travel and failing to register occurred prior to the interim rule. Wasn't mounting what Torres is bringing forward here, which is the ex post facto claim, as it relates to whether there's a valid rule and whether or not that February 28th date is in fact valid. And lastly, I'll address Byrd. Byrd was actually my case. About three years ago, I stood right here, and actually, Judge Clement was right where you are, Your Honor. And she told me, as I started arguing about the APA, that I should probably not waste my time and move on to the other issues in the case. And I found out later, unbeknownst to me, she had been on the Johnson panel that had gone previous to me, but the opinion hadn't been issued. And so Byrd, yes, Byrd was a similar APA challenge as Johnson. I can tell this court I wrote it and argued it, but it was not the ex post facto challenge. You might have changed your mind. Yes, it was not the ex post facto challenge. And I can tell the court as well, I worked up the cert petition that the government mentioned being denied, and that cert petition focused namely on the harmless error, use of harmless error analysis from the Fifth Circuit in Johnson and challenging that. We're not challenging that today. This is the ex post facto. There is clearly not a valid rule in place at the time that Mr. Torres failed to register. And as a result, his conviction violated ex post facto and should be vacated, Your Honor. Okay. Thank you very much. Thank you, counsel.